to be developed for use in connection with or in addition to any power actually to be used by such person, firm or corporation serving the general public.

By the enactment of this amendment, the provisions of the Revisal 1573, amended by North Carolina Public Laws of 1907, are repealed. The power of eminent domain, as applied to mills and water-powers was expressly denied in that statute.

Although mills and water powers could not be condemned generally for public use before the passage of the 1925 law, yet the courts of North Carolina recognized the fact that the Legislature could grant special charters to *quasi*-public corporations which would allow them to exercise the power of eminent domain over mills and water powers, despite the general statute (1907) to the contrary.[1]

J. Q. L.

## INSURANCE

GROUP LIFE INSURANCE—Ch. 58 provides for group life insurance. This is comparatively new, but seems to be increasing in favor. Its attractiveness lies largely in the fact that no medical examination is necessary. This is because the mortality rate in any given homogeneous group is only the average mortality rate as shown by the mortality tables. If the ordinary life insurance were issued without physical examination, the sickly and feeble would apply in great numbers, thus raising the death rate, as based on experience. This would not be so in a selected group and this is what group insurance does. For instance the University of North Carolina might take out a group life insurance policy on all its employees, insuring them against death, total and partial disability and old age. The average in this group would be about the same as the general average and, therefore, no unusual losses would result to the Company, even though they had required no medical examination.[1]

This idea embodied in the New York Law in 1918[2] and Massachusetts in 1921,[3] now appears in the North Carolina Law.[4]

Section 1 is copied verbatim from the New York law requiring the group to include not less than fifty employees and that 75 per-

---

[1] *Power Co. v. Power Co.* (1916) 171 N. C. 248, 88 S. E. 349.

[2] See Proceedings of the Insurance Institute of Toronto 1913-14. p. 66, quoted p. 110, Wood, *Cases on Insurance* (2nd ed.)

[3] N. Y. Laws 1918, Ch. 192 (N. Y. Ins. Law, § 101a.)

[3] Mass. Gen. Laws 1921, Ins., § 133.

[4] N. C. Pub. Laws 1925, ch. 58.

EXHIBIT B.

cent of them shall be insured where they pay the premium jointly with the insurer.

Standard provisions of the policy to be filed with the Insurance Commissioner require:

(a) Incontestability after two years except for nonpayment of premium and conditions about military and naval service in time of war. (Note that fraud is not excepted).

(b) Policy and application shall constitute entire contract, and warranties are construed as representations, just as in ordinary life and fire insurance policies.

(c) Provision for equitable adjustment of premiums in case of misstatement of age.

(d) Individual certificate to employee and new individual policy if he changes employment.

(e) Provision for adding new employees who are eligible.

The proceeds are exempt from execution.

CH. 70—This act contains several amendments to C. S., ch. 106 (N. C. Ins. Law). Section 1 requires bona fide resident agents. The reference to C. S. 6302 seems to be wrong.

Other provisions affect fraternal insurance, tornado insurance, and coinsurance.

This last is very little used in North Carolina, the three-fourths value clause being more common, but it may be upon request stamped "Coinsurance contract." The insured can then recover for the full amount of his loss (not simply three-fourths value); but he must insure the full value of his property, or he becomes his own insurer for the difference. This kind of insurance will probably become more common in North Carolina as it has in New York, where it is better known.

CH. 82—Increases the amount to which life insurance may be issued without physical examination under C. S. 6460 from $300 to $2,000 and provides that misrepresentation does not avoid policy except in case of fraud.

CH. 298—INSURABLE INTEREST—In *Trinity College v. Ins. Co.*,[6] a policy by a member of the Methodist Church in favor of Trinity

---

[5] N. C. Pub. Laws 1925, ch. 70.
[6] (1893) 113 N. C. 244, 18 S. E. 202.

Case 09-31575   Doc 40-2   Filed 11/22/10   Entered 11/22/10 17:00:24   Desc Exhibit
           Page 3 of 5

College (now Duke University), the institution paying the premiums, was held void because a wagering contract.

Ch. 298 undertakes to give to religious, charitable and educational institutions an insurable interest in the life of any student, former student, friend or any person loyal to the institution, when such person makes an institution the beneficiary in a life insurance policy and has paid the premiums on said policy. This act covers alumni giving plans, etc. It is to be noted that there never was any objection to a person taking out insurance on his own life payable to any beneficiary he selects. This involves no question of insurable interest, as was involved in the *Trinity College case,* where the institution took out the policy on the life of a church member. *Victor v. Mills*[7] held that it was beyond the power of a corporation to insure the life of any officer, but this was changed by statute in 1909,[8] because of the above case to the contrary. It would appear that the legislature intended to extend the doctrine of insurable interest to the case of an institution taking out a policy or paying premiums on a policy insuring the life of a student, friend or person loyal to the institution, but the statute does not so provide. It merely states a well-established rule in the law of insurance, whereby a person may take out a policy on his own life and provide for a beneficiary as he sees fit.

P. H. W.

## POLICE REGULATIONS

REGULATION OF TRADES AND CALLINGS—The tendency of present-day legislatures to regulate the carrying on of various professions and businesses was illustrated during the past session of the North Carolina General Assembly. That vast and indefinable power of the State, called the police power, reaches out to say how certain employments shall be carried on. The regulated employments form a constantly increasing list. Men and women are no longer let alone to work as they please. The standards of their professions and employments are raised whether they approve or not. The State is insisting that certain employments be regulated so that persons engaging in them may be more competent and may be mindful of the public interest involved in their work. For this purpose, boards and bureaus are multiplied, preliminary training is required, examinations must be passed and licenses are issued, with the usual license

---

[7] (1908) 148 N. C. 107, 61 S. E. 648.

[8] N. C. Pub. Laws 1909, ch. 507; See *Trust Co. v. Ins. Co.* (1917) 173 N. C. 558, 562, 92 S. E. 706.

convenience and not because of any inherent probability of its truth,[9] such a presumption is not a legitimate foundation for another presumption; but where there is a presumption, in the true meaning of the word, which accords with the natural inferences from the facts proved, then the facts giving rise to such presumption are as probative as direct or testimonial evidence and should constitute a legitimate foundation for another inference or presumption.

C. R. JONAS.

An automobile, driven by a chauffeur in an unlawful manner, ran into another car and killed one of its occupants. The owner, who was merely present in the car, was held guilty of involuntary manslaughter. *Moreland v. State*, 139 S. E. 77 (Ga., 1927). Whether a master should be held criminally liable for the acts of his servant in the scope of employment, thus extending the principles of agency applicable in civil suits for damages, presents some interesting questions.

GROUP INSURANCE—RIGHTS OF BENEFICIARY UNDER GROUP POLICY—Group life insurance is of comparatively recent origin, the first policy having been issued in 1912, but it is steadily gaining favor. This branch of insurance, simply defined, is the coverage of a number of individuals—not less than fifty—by a single or blanket policy. A more complete definition was embodied in the New York Laws in 1918.[1] This type of insurance is apparently intended for the insurance of employees or certain groups of employees. Medical examination is not required, because the indiscriminate insuring of all the employees in a given employment or in a givevn class eliminates or reduces to a minimum the individual selection against the company. Medical examination is nothing more than an expedient

---

[9] This distinction is pointed out by Prof. Chafee in his article "Progress of the Law,—Evidence" 35 Harv. Law Rev. 302, 310.

[1] New York Laws 1918, c. 192 (N. Y. Ins. Laws, § 101a). "Group insurance is that form of life insurance, covering not less than fifty employees with or without medical examination, written under a policy issued to the employer, the premium on which is to be paid by the employer, or by the employer and employees jointly, and insuring only all of his employees or all of any class or classes thereof determined by conditions pertaining to the employment for amounts of insurance based upon some plan which will preclude individual selection, for the benefit of persons other than the employer; provided, however, that when the premium is to be paid by the employer and employees jointly and the benefits of the policy are offered to all eligible employees, not less than 75 per centum of such employees may be so insured."

adopted to counteract the adverse selection which would result if all applications were indiscriminately accepted by the companies. There must be a group of at least fifty individuals to permit the law of averages to work smoothly so that there may not be too large a percentage of impaired lives within the group. Massachusetts in 1921,[2] and North Carolina in 1925[3] followed New York in defining "group insurance." The North Carolina statute incorporates standard provisions for policies of group insurance, the most important of which are the requirements that individual certificates be issued to the employees and a new individual policy if he leaves the employment, and a provision for adding new employees who are eligible. The employer is the policyholder during the employment and the certificate is merely informatory. The proceeds of the policy are exempt from execution. The employee usually names a beneficiary but if he omits to do so the proceeds of the policy go to his dependents. The insurance money will not be paid to his estate if he has any dependents or any relatives as close as brother or sister.

The recent case of *Thompson v. Pacific Mills et al*,[4] which seems to be the only decision concerning group insurance, decides that the right of a beneficiary under group policy ended after the expiration of one month temporary continuance after date for payment of annual premium, in view of the terms of the policy placing no restriction on the original contracting parties from entering into any contract for insurance. Nor did employer's failure to notify the beneficiary of the cancellation of the group policy create liability on the theory that by paying the premiums beneficiary might have taken advantage of certain provisions, since employee covered by the policy could obtain an individual policy only on termination of the employment for any reason. The premiums were paid by the employer, and in the certificate issued to the employee it was specifically stated that the taking out of the policy did not establish a precedent to continue the insurance. If as in some policies the insured has been required to pay part of the premium, the beneficiary might justly have complained of the failure of the employer to notify him of the cancellation; but under the circumstances of this case it was rightfully held that the beneficiary had no cause of action against either the employer or the insurance company.        J. C. RODMAN, JR.

---

[2] Mass. Gen. Laws 1921, Ins. § 133.
[3] N. C. Pub. Laws 1925, c. 58.
[4] 139 S. E. 619 (1927).